139 F.3d 901
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Scott F. FROHWIRTH, Petitioner-Appellant,
v.
Marianne A. COOKE, Respondent-Appellee.
 No. 97-1744.
 United States Court of Appeals, Seventh Circuit.
 Decided Dec. 22, 1997.
Argued Nov. 13, 1997.
Rehearing Denied Feb. 24, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 96-C-1284, J.P. Stadtmueller, Chief Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. KENNETH F. RIPPLE, and Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The district court denied Scott Frohwirth's petition for a writ of habeas corpus, 28 U.S.C. § 2254, without an evidentiary hearing. Frohwirth appeals, arguing that he is entitled to an evidentiary hearing because he has alleged facts which, if proved, would entitle him to a writ. We affirm.
 
 I. BACKGROUND
 
 2
 Pursuant to a plea agreement, Frohwirth pleaded no contest to an eight-count consolidated information. The charges arose out of Frohwirth's home improvement business practices. He targeted particularly vulnerable people, convincing them that their houses needed factually unnecessary repairs. When the victims said they were unable to pay, he helped them get financing. However, in obtaining the financing, Frohwirth lied to the victims about the terms and amounts of the loans, stole the loan checks, and cashed several of the loan checks over forged signatures knowing the signatures were forged. Moreover, he either did no work on the victims' homes or performed work that was worth far less than he charged. Accordingly, counts one, two, three and seven charged Frohwirth with forgery-uttering, and counts four, five, six and eight charged him with theft. Additionally, counts seven and eight charged Frohwirth with being a habitual criminal.
 
 
 3
 At the change of plea hearing, Milwaukee County Circuit Court Judge Lee Wells conducted a lengthy plea colloquy with Frohwirth. Throughout the hearing Judge Wells grilled the State about the factual bases underlying each of the charges and repeatedly asked Frohwirth whether he agreed that the State could prove those facts. In each instance, Frohwirth answered in the affirmative. The Judge never specifically asked Frohwirth whether any promises or threats induced his plea. Judge Wells found Frohwirth guilty, entered judgment against him and scheduled a sentencing hearing before Milwaukee County Circuit Court Judge Janine P. Geske.
 
 
 4
 Prior to the sentencing hearing, Judge Wells wrote an inter-office memorandum to Judge Geske stating that, in his opinion, "[s]ome minor problems developed during the plea-taking process that ... should be addressed by the sentencing court." The concerns that Judge Wells' had that are relevant to this case are that Frohwirth never personally stated that his plea was not made in response to promises or threats, and that the factual basis for two of the theft by fraud counts was unclear.
 
 
 5
 Judge Geske began Frohwirth's sentencing hearing with Judge Wells' memorandum. She stated the substance of his concerns, gave a copy of the memo to the attorneys, and asked the State to clarify the factual bases for each of the theft by fraud counts. The State complied, and Frohwirth's attorney, Gerald Boyle, stated that the State's recitation of the factual bases for the charges was accurate and consistent with the plea agreement.
 
 
 6
 Judge Geske then addressed Frohwirth directly. She asked if what Boyle had said was correct and whether he still wanted to go forward with the plea. Frohwirth answered "yes" to both questions. She then conducted another colloquy with Frohwirth, assuring that he understood the charges, the factual bases of the charges, and the rights he was surrendering by pleading no contest. During the course of the colloquy the following exchange occurred:
 
 
 7
 THE COURT: And you have not--I'll ask you--have you been promised anything by anyone other than what has been told to the courts at the time you were taking the pleas? Any promises other than what the court knows?
 
 
 8
 THE DEFENDANT: No.
 
 
 9
 THE COURT: There is no question as to that?
 
 
 10
 THE DEFENDANT: No.
 
 
 11
 THE COURT: You haven't been promised anything? There are no promises that are out there that I don't know about at this point?
 
 
 12
 THE DEFENDANT: No, Your Honor.
 
 
 13
 THE COURT: In terms of threats, has anybody threatened you specifically to get you to enter these pleas?
 
 
 14
 THE DEFENDANT: No, Your Honor.
 
 
 15
 THE COURT: And the only threat was that Mr. Boyle advised you that if you didn't start pleading to these matters, that other counties might charge you with similar incidents?
 
 
 16
 THE DEFENDANT: Yes.
 
 
 17
 At the conclusion of this interaction, Judge Geske again asked Frohwirth whether he still wanted to go ahead with his plea. Frohwirth answered in the affirmative. At the conclusion of the sentencing hearing, Judge Geske sentenced Frohwirth to three consecutive ten-year terms of imprisonment, followed by ten years of probation. She also ordered that he pay restitution to his victims.
 
 
 18
 On direct appeal, Frohwirth challenged his sentence. The state appellate court affirmed the judgment, and the state supreme court denied transfer. Frohwirth then filed a motion for pre-trial sentencing credits in the state circuit court, which was denied. While the appeal of the denial of his motion for credits was pending, he filed a motion to withdraw his plea in Milwaukee County Circuit Court. The circuit court denied the motion without consideration because the appellate court had jurisdiction over the case at that time. The circuit court also noted:
 
 
 19
 Defendant should have raised these issues previously. Unless he subsequently demonstrates that the failure to raise them in his prior motion was justified, and a review of his motion does not establish his failure to do so was justified, he will be barred from reraising them in the future. State v. Escalona-Naranjo, 185 Wis .2d 169 (1994) [sic].[1]
 
 
 20
 Finally, the state appellate court affirmed the denial of Frohwirth's motion for sentencing credits, and the state supreme court denied transfer.
 
 
 21
 On November 13, 1996, Frohwirth filed pro se a petition for a writ of habeas corpus in federal district court. He raised six claims, only four of which are relevant to this appeal: trial counsel rendered ineffective assistance; his due process rights were violated because Judge Wells accepted his plea without determining that it was voluntary; his plea was involuntary because the State threatened to indict his father unless he entered the plea; and his due process rights were violated because Judge Wells accepted his plea without finding a sufficient factual basis. The district court denied the petition.
 
 II. ANALYSIS
 
 22
 As a preliminary matter, we must decide whether Frohwirth has procedurally defaulted his claims by failing to (1) present the claims in state court and (2) develop factual support for the claims in state court. Regarding his failure to present the claims in state court, Escalona-Naranjo, 401 Mass. 470, 517 N.E.2d 157 (Wis.1994), changed the long-standing Wisconsin rule that a prisoner could raise any constitutional challenge omitted from direct appeal on collateral attack regardless of why the claims were omitted. See, e.g., Bergenthal v. State, 72 Wis.2d 740, 242 N.W.2d 199 (Wis.1976). Under Escalona-Naranjo, prisoners must now show a "sufficient reason" for omitting any claim from direct appeal. Escalona-Naranjo, 517 N.W.2d at 164. In Liegakos v. Cooke, we held that the state procedural rule announced in Escalona-Naranjo was inadequate to bar federal habeas review when a petitioner filed his direct appeal before Escalona-Naranjo was decided. 106 F.3d 1381, 1385 (7th Cir.1997). Frohwirth filed his direct appeal before Escalona-Naranjo was decided. Therefore the state's use of Escalona-Naranjo to bar his claims in state court does not preclude our review of his claims.
 
 
 23
 Moreover, because Frohwirth was not at fault for failing to develop a factual record supporting his claims in state court, the standard provided in § 2254(e)(2) does not apply to this case. Burris v. Parke, 116 F.3d 256, 258-59 (7th Cir.1997); Love v. Morton, 112 F.3d 131, 136 (3d Cir.1997); see also Porter v. Gramley, 112 F.3d 1308, 1317 n. 8 (7th Cir.1997) (dicta). Instead, we evaluate Frohwirth's request for an evidentiary hearing under the standard existing prior to the enactment of § 2254(e)(2). Burris, 116 F.3d at 259. Under Tamayo-Reyes "a federal evidentiary hearing is required if a habeas petitioner alleges facts which, if proved, would entitle him to relief and the state courts--for reasons beyond the control of the petitioner--never considered the claim in a full and fair hearing." Porter, 112 F.3d at 1317; see Spreitzer v. Peters, 114 F.3d 1435, 1456 n. 9 (7th Cir.1997). As stated above, Frohwirth has established that "for reasons beyond his control"--namely, the mid-stream change in the state procedural rules governing collateral attack--he never received a state court hearing on his claims. The remaining question is whether he has established prejudice; has he alleged facts which, if proven, would entitle him to writ.
 
 
 24
 Frohwirth challenges the validity of his no contest plea on three grounds. First he claims that his plea was invalid because it was coerced by threats against his father. Then he claims that the voluntariness of his plea was not adequately established on the record at the change of plea hearing and that the trial court did not find a sufficient factual basis for his plea. The latter two grounds are quickly resolved because they are factually inaccurate.
 
 
 25
 Judge Wells had the State articulate the factual basis for each count in the consolidated information, and then asked Frohwirth whether he understood each charge and how he wanted to plead in response to each charge. Although Judge Wells later expressed doubt about the factual basis for two of the theft by fraud counts,[2] we believe that the State adequately explained the factual basis for each count at the change of plea hearing. Moreover, Higgason v. Clark, 984 F.2d 203, 208 (7th Cir.1993), suggests that the Constitution does not require putting a factual basis for a plea in the record, and, therefore, the lack of a factual basis does not entitle a petitioner to habeas corpus relief.
 
 
 26
 Moreover, Judge Geske cured any alleged shortcoming in the change of plea proceedings, particularly in establishing the voluntariness of Frohwirth's plea. Frohwirth argues, without citing any supporting cases, that Judge Geske was incapable of curing the alleged deficiencies because Judge Wells had already accepted his plea and entered judgment against him. However, Judge Geske made it clear that Frohwirth could withdraw his plea if he so desired. Frohwirth, in turn, made it clear that he wished to proceed with the plea.
 
 
 27
 Frohwirth also claims that the State coerced his plea by threatening to indict his father. In support of this allegation, Frohwirth attached a letter from his then-attorney Thomas Wilmouth acknowledging that he vaguely remembered threats being made against Frohwirth's father, as well as several affidavits attesting to his father's non-involvement in the home improvement business.[3]
 
 
 28
 A plea procured by threats of improper harassment or threats to bring bad faith charges against third parties is not voluntary. See Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Politte v. United States, 852 F.2d 924, 929-30 (7th Cir.1988); see also Miles v. Dorsey, 61 F.3d 1459, 1468 (10th Cir.1995), cert. denied, 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996). In determining whether a plea has been improperly coerced, courts consider whether a defendant has stated under oath that no other threats or promises induced the plea. See, e.g., United States v. Morrow, 915 F.2d 608, 613-14 (4th Cir.1990); Politte, 852 F.2d at 931. There is a strong presumption that statements made under oath during a plea colloquy are truthful. Jones v. Page, 76 F.3d 831, 844-45 (7th Cir.1996); United States v. Ellison, 835 F.2d 687, 693 (7th Cir.1987). Frohwirth simply has not come forward with enough to overcome this presumption. A letter recounting his attorney's fuzzy recollection of some unspecified threat comes nowhere near convincing us to question the truthfulness of his in-court attestation that no improper threats or promises induced his plea.
 
 
 29
 Finally, Frohwirth maintains that his counsel, Boyle, rendered ineffective assistance by allowing him to plead no contest even though Boyle knew about the alleged improper threat and the alleged deficiencies in the change of plea hearing. As stated above, the claims underlying Frohwirth's claim of ineffective assistance are unavailing. Therefore, Frohwirth cannot establish prejudice with regard to Boyle's allegedly deficient performance.
 
 
 30
 The district court's judgment is AFFIRMED.
 
 
 
 [1]
 In his motion to withdraw his plea, Frohwirth argued that the Escalona-Naranjo rule should not apply to his case because his direct appeal was filed before that decision. (R. 1, Petition Ex. H, Motion to Withdraw No-Contest Plea at 7.) However, this court found that Wisconsin applies the Escalona-Naranjo rule to prisoners who filed their direct appeals before Escalona-Naranjo was decided. Liegakos v. Cooke, 106 F.3d 1381, 1384 (7th Cir.1997)
 
 
 [2]
 Frohwirth incorrectly maintains that Judge Wells expressed doubts about the factual basis for counts 2 and 3 of the consolidate information. (Frohwirth Br. at 33.) Counts 2 and 3 of the information charges Frohwirth with forgery-uttering; Judge Wells' memorandum makes clear he questioned the factual basis for two counts of theft by fraud. Frohwirth seems to imply that, because counts 2 and 3 charge a violation of the same law on the same date, Judge Wells must have been questioning the factual basis for those counts. The implication is erroneous. The State clearly explained that counts 2 and 3 "involve Christina Hovey and Niel Knudtson, two checks which were passed on the same date, time and location." (Tr. of May 31, 1991, at 12.)
 
 
 [3]
 The State objects to this court's consideration of these affidavits, arguing that they are outside the record of appeal. (State Br. at 3, 12). However, the district court made clear that it considered all of the documents attached to Frohwirth's petition in making its Rule 4 determination. (R. 4, Order of Mar. 10, 1997, at 2 .)