COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1969**

Cir. Ct. No. **2010CF5110**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOHNNY MALDONADO,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. CONEN, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Johnny Maldonado appeals from an order denying his WIS. STAT. § 974.06 (2017-18) motion for postconviction relief.[1]    He argues that he is entitled to an evidentiary hearing on his motion.    We reject his arguments and affirm.

## BACKGROUND

¶2    On April 11, 2009, two men were shot in an alley.    One of the men, Spencer Buckle, died of his injuries.    The second man, S.V., survived.    Maldonado and his co-defendant, Raymond L. Nieves, were charged with and convicted of first-degree intentional homicide with a dangerous weapon and attempted first-degree intentional homicide with a dangerous weapon, both as a party to a crime. *See* WIS. STAT. §§ 940.01(1)(a), 939.63(1)(b), 939.32, and 939.05 (2009-10). They were tried jointly.[2]

¶3    Maldonado did not file a postconviction motion, but he pursued a direct appeal.    In that appeal, the only issue raised was the admission of other acts evidence concerning a prior shooting in Illinois.    *See **State v. Maldonado***, No. 2013AP1480-CR, unpublished slip op. ¶1 (WI App July 15, 2014). ***Maldonado*** summarized the other acts issue:

> During pretrial proceedings, the State moved to admit other acts evidence pursuant to WIS. STAT. § 904.04(2).    Specifically, the State sought to show that Maldonado, Nieves, Buckle, and [S.V.] were members of a street gang called the Maniac Latin Disciples.    Further, the

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable Richard J. Sankovitz presided over the jury trial and sentenced Maldonado.    In this decision, we will refer to Judge Sankovitz as the trial court.

> State sought to show that in March 2009, a member of a rival street gang, the Latin Kings, fired shots at [S.V.], and that he, Maldonado, Nieves, and Buckle, together with a fifth member of the Maniac Latin Disciples, retaliated by killing a member of the Latin Kings in Waukegan, Illinois. Maldonado, Nieves, Buckle, and [S.V.] fled to Wisconsin, but Maldonado and Nieves subsequently became concerned that one or more of the other people who had participated in the Illinois homicide were providing information about that crime to the police. The State argued that evidence about the events and circumstances of the Illinois homicide, together with the concerns of Maldonado and Nieves that some of those who participated in the Illinois homicide might be cooperating with law enforcement, all established a motive for Maldonado and Nieves to kill Buckle and attempt to kill [S.V.].

*Id.*, ¶4. The trial court granted the State's motion over Maldonado's objection. *Id.*, ¶5. On appeal, we affirmed, concluding the other acts evidence "was relevant to prove motive" and "was not unfairly prejudicial." *See id.*, ¶1. The Wisconsin Supreme Court denied Maldonado's petition for review on November 13, 2014.

¶4      Nieves also appealed. This court ordered a new trial, but the Wisconsin Supreme Court reversed, reinstated the judgment of conviction, and remanded the case to this court for consideration of an ineffective assistance claim.[3] *See **State v. Nieves**,* 2017 WI 69, ¶¶1, 4, 376 Wis. 2d 300, 897 N.W.2d 363. The supreme court considered several issues in *Nieves*, two of which are relevant to this appeal. First, Nieves argued that the trial court violated WIS. STAT. § 971.12(3) by declining to sever his trial from Maldonado's trial and by admitting the testimony of Ramon Trinidad, a fellow inmate at the jail who

---

[3] The ineffective assistance claim we considered on remand concerned the failure of Nieves' trial counsel to present an alibi defense. *See **State v. Nieves**,* No. 2014AP1623-CR, unpublished slip op. ¶5 (WI App March 13, 2018). We rejected Nieves' arguments and affirmed his conviction. *See id.*, ¶1.

testified that both Maldonado and Nieves made incriminating statements to Trinidad concerning the shooting. *See Nieves*, 376 Wis. 2d 300, ¶¶10-11, 52. The supreme court concluded that even if § 971.12(3) had been violated, the admission of Trinidad's testimony was harmless, explaining:

> The overwhelming evidence the State presented at trial of Nieves' guilt leads us to conclude that he would have been found guilty of the crimes for which he was convicted even if the circuit court had excluded Trinidad's testimony.
>
> The crux of the State's case was the testimony of the surviving victim, S.V., who testified at length as to the particulars of the crime and Nieves' involvement. S.V.'s testimony was salient; it was detailed, direct evidence of Nieves' involvement in the crimes for which he was convicted.
>
> ….
>
> In contrast, the testimony of Trinidad was much more limited than that of S.V., and therefore, it did not provide evidence for any aspect of the crime that the jury did not otherwise hear in more detail from S.V.
>
> Accordingly, the circuit court's failure to exclude Trinidad's testimony did "not affect the substantial rights of" Nieves. *See* [WIS. STAT.] § 805.18(1). S.V., the surviving victim, explained both the events leading up to the homicide as well as the particulars of the crime. S.V. testified that Nieves brought Buckle and him into an alley, where they fatally shot Buckle and where they shot and wounded him. As a result, the evidence against Nieves was such that he would have been convicted without the testimony of Trinidad.

*Id.*, ¶¶52-53, 59-60 (replacing the pseudonym David with the surviving victim's initials).[4]

---

[4] In Nieves' appeal, both this court and the Wisconsin Supreme Court used the pseudonym "David" to refer to the surviving victim, S.V. In this decision, we refer to the surviving victim by his initials.

¶5   The second relevant issue raised in *Nieves* concerned the admission of hearsay testimony.  Specifically, S.V. testified at trial—over Nieves' hearsay objection—that a man named "Boogie Man" told him that Maldonado and Nieves were planning to kill him.  *See id.*, ¶62.  The court concluded that even though the statement was improperly admitted, the admission was harmless.  *See id.*, ¶63.  The court explained:

> The statement of "Boogie Man" preceded S.V.'s extensive and detailed account of the homicide and attempted homicide.  We need not rehash S.V.'s testimony at length.  It suffices to note that S.V. testified that Nieves and Maldonado brought him and Buckle into an alley, where they fatally shot Buckle and where they wounded him.
>
> The single statement by "Boogie Man" to S.V. that Nieves and Maldonado planned to kill him, when viewed in context, contributed little to S.V.'s testimony.  Any error that resulted from the admission of this statement was alleviated when S.V. explained how Nieves and Maldonado fatally shot Buckle and attempted to fatally shoot him.
>
> As a result, the circuit court's decision to admit the testimony, while it may have been error, was harmless.

*Id.*, ¶¶64-65 (replacing the pseudonym David with the surviving victim's initials).

¶6   While *Nieves* was pending in the Wisconsin Supreme Court, Maldonado filed a WIS. STAT. § 974.06 motion, which he was allowed to amend after *Nieves* was released.  He argued in his amended motion that trial counsel provided ineffective assistance by failing to object to hearsay testimony concerning Boogie Man and by failing to call two witnesses who would have

impeached Trinidad's testimony.[5] Maldonado further argued that postconviction counsel provided ineffective assistance by failing to raise these clearly stronger issues, which he claimed provided a sufficient reason for not raising these issues sooner. The circuit court denied the amended § 974.06 motion without a hearing.[6] This appeal follows.

## DISCUSSION

¶7 On appeal, Maldonado continues to allege that his trial counsel provided ineffective assistance by failing to call two particular witnesses to impeach Trinidad's testimony and by failing to object to the admission of hearsay testimony concerning Boogie Man. He further argues that postconviction counsel provided ineffective assistance for failing to raise these clearly stronger issues prior to Maldonado's direct appeal. For reasons outlined below, we conclude that the record conclusively demonstrates that Maldonado was not entitled to an evidentiary hearing on his motion or other relief.

### I. Legal standards.

¶8 We begin our analysis with the applicable legal standards. WISCONSIN STAT. § 974.06 permits collateral review of a defendant's conviction based on errors of jurisdictional or constitutional dimension. *See **State v.***

---

[5] Maldonado also asserted that he was entitled to a new trial based on newly discovered evidence (i.e., potential testimony from a new witness). However, Maldonado's appellate brief indicates that he is not pursuing that issue on appeal. Therefore, we will not discuss it. *See **Reiman Assocs., Inc. v. R/A Advert., Inc.**, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (holding that issues not briefed are deemed abandoned).

[6] The Honorable Jeffrey A. Conen denied Maldonado's WIS. STAT. § 974.06 motion. In this decision, we will refer to Judge Conen as the circuit court.

*Johnson*, 101 Wis. 2d 698, 702, 305 N.W.2d 188 (Ct. App. 1981). However, the statute "was not designed so that a defendant, upon conviction, could raise some constitutional issues on appeal and strategically wait to raise other constitutional issues a few years later." *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). Thus, a defendant may not seek collateral review of an issue "that could have been raised on direct appeal or in a [WIS. STAT. §] 974.02 motion" unless there is a "sufficient reason" for failing to raise it earlier. *See id.* (italics omitted). Postconviction counsel's ineffectiveness may, in some circumstances, constitute a sufficient reason for an additional postconviction motion. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996).

¶9      The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims that postconviction counsel was constitutionally ineffective. *See State v. Balliette*, 2011 WI 79, ¶¶21, 28, 336 Wis. 2d 358, 805 N.W.2d 334. The defendant must show both that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland*, 466 U.S. at 687. A court may consider either deficiency or prejudice first, and if the defendant fails to satisfy one prong, the court need not address the other. *See id.* at 697. To prove deficiency, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶10      When, as here, a defendant alleges that postconviction counsel was ineffective for failing to raise claims that the defendant believes were meritorious, the defendant cannot overcome the procedural bar imposed by WIS. STAT.

§ 974.06, absent a showing that the neglected claims are "clearly stronger than the claims postconviction counsel actually brought." *See* ***State v. Romero-Georgana***, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668. Whether a § 974.06 motion is procedurally barred "presents a question of law [that] we review *de novo*." ***State v. Tolefree***, 209 Wis. 2d 421, 424, 563 N.W.2d 175 (Ct. App. 1997) (italics added). When the neglected claim is that trial counsel provided ineffective assistance, the defendant must show that trial counsel was, in fact, ineffective. *See* ***State v. Ziebart***, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369. A claim that trial counsel performed ineffectively is reviewed using the two-prong ***Strickland*** analysis. *See* ***Balliette***, 336 Wis. 2d 358, ¶21.

¶11 Additionally, a defendant challenging the effectiveness of counsel must preserve counsel's testimony in a postconviction hearing. *See* ***State v. Curtis***, 218 Wis. 2d 550, 554-55, 582 N.W.2d 409 (Ct. App. 1998). A defendant, however, is not automatically entitled to such a hearing. To earn a hearing on a postconviction motion, a defendant is required to allege sufficient material facts that, if true, would entitle the defendant to relief. *See* ***Balliette***, 336 Wis. 2d 358, ¶¶18, 79. "[I]f the motion does not raise such facts, 'or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,'" the trial court may deny the motion without a hearing. ***Id.***, ¶18 (citation omitted). The sufficiency of a postconviction motion is a question of law that we review *de novo*. ***Id.***

**II. Trial counsel's decision not to call two witnesses.**

¶12 Maldonado's WIS. STAT. § 974.06 motion alleged that his trial counsel provided ineffective assistance by failing to call two witnesses, Sugar Sullivan and Jeffrey Harper, who would have testified about their interactions with

Trinidad, who was in jail at the same time as Sullivan and Harper. As explained above, Trinidad testified at trial that both Maldonado and Nieves made incriminating statements to him about the shooting. Maldonado's motion alleged that testimony from Sullivan and Harper would have impacted the jury's assessment of Trinidad's credibility.

¶13 Maldonado's motion contained an affidavit from the attorney who filed the WIS. STAT. § 974.06 motion. The attorney indicated that she spoke with Sullivan and that he was prepared to testify as follows:

> At Mr. Trinidad's request, Mr. Sullivan delivered a note to Mr. Maldonado on or about September 19, 2011. This note, which was written on a piece of paper previously used to keep score in a game, contained Mr. Trinidad's name and a booking number for Mr. Trinidad. When he delivered the note, Mr. Sullivan told Mr. Maldonado that if he put $5,000 on Mr. Trinidad's "books," Mr. Trinidad in exchange would recant the statement he made to police in which he said that Mr. Maldonado confessed.

¶14 As for potential testimony from Harper, Maldonado's motion contained an affidavit from an investigator who spoke with Harper. The investigator indicated that Harper was prepared to testify as follows:

> On several occasions, Mr. Harper saw Mr. Trinidad go into the cells of other inmates and steal items. But most of the time, he would have younger inmates, such as Mr. Harper, do that dirty work for him.
>
> ….
>
> At one point, Mr. Trinidad told Mr. Harper to tell Mr. Maldonado that Mr. Trinidad would not testify against Mr. Maldonado if Mr. Maldonado paid Mr. Trinidad $5,000.
>
> Mr. Trinidad also requested that Mr. Harper back him up when Mr. Trinidad testified against Mr. Maldonado and promised that Mr. Trinidad's lawyer would get both of them out of jail if Mr. Harper did so. Mr. Trinidad then

showed Mr. Harper court papers that belonged to Mr. Maldonado.

Mr. Harper never got the chance to read the court papers that Mr. Trinidad showed him and he was transferred to another pod.

(Paragraph lettering omitted.) Maldonado argued that Harper's testimony "provides the answer to the crucial question of how Trinidad could have known details about this case without Maldonado having told him." Maldonado also asserted that if "the jury heard from both Harper and Sullivan that Trinidad's desire to get something for himself meant that his testimony was for sale to the highest bidder, the jury would have had even more reason to reach this conclusion" and would have had doubts about Maldonado's guilt.

¶15 The circuit court chose to reject Maldonado's ineffective assistance argument based on the prejudice prong of the ***Strickland*** analysis, concluding that Maldonado was not prejudiced by trial counsel's failure to call Sullivan and Harper as witnesses. *See id.*, 466 U.S. at 697 (stating that a court may consider deficiency or prejudice prong first, and need not address the other). First, the circuit court noted that in ***Nieves***, the Wisconsin Supreme Court concluded that even without Trinidad's testimony, Nieves would have been found guilty based on the strength of S.V.'s testimony. *See id.*, 376 Wis. 2d 300, ¶¶52-53. Second, the circuit court agreed with the State that Sullivan's proffered testimony did not provide "any information from which one could conclude that R[a]mon Trinidad made up the testimony about what Maldonado told him." Third, the circuit court agreed with the State that Harper's statement did not prove that Trinidad went into Maldonado's cell. Finally, the circuit court concluded:

> [T]his court cannot find that either of these witnesses would have put a dent in the testimony of the surviving victim, S.V. Because his testimony alone was more than sufficient to convict the defendant, there is not a reasonable

10

probability that any failure on the part of counsel to call these witnesses would have made a singular difference in the outcome.

¶16 We agree with the circuit court that Maldonado's motion did not establish that he was prejudiced by trial counsel's failure to call Sullivan and Harper as witnesses. For reasons outlined below, the record "conclusively demonstrates" that Maldonado is not entitled to relief. *See **Balliette***, 336 Wis. 2d 358, ¶¶18, 79 (citation omitted).

¶17 First, the proffered testimony from Sullivan and Harper would not definitively establish that Trinidad lied when he said Maldonado admitted participating in the shooting. Rather, it would suggest that Trinidad was willing to change his testimony in exchange for money. We agree with the circuit court:

> [T]he attorneys for both defendants attacked Trinidad's credibility by attacking the number of convictions and the consideration he was receiving. It is not reasonable to conclude that this one additional piece of information, coming from a person who was also in jail and who did not want to testify, would have resulted in the jury finding Mr. Trinidad not credible.

(Quoting with approval from the State's circuit court brief.)

¶18 Second, Harper's proffered testimony would not prove that Trinidad learned about the shooting from police reports and other legal documents concerning the case. Harper's statement to the investigator did not indicate that he ever saw Trinidad in Maldonado's cell, and he did not specify when he allegedly saw Trinidad in possession of papers concerning Maldonado. Thus, contrary to Maldonado's argument, Harper's statement would not establish that Trinidad learned details about the shooting from paperwork rather than Maldonado. We also note that the parties stipulated at trial that neither Maldonado nor Nieves had access to their police reports until February 11, 2011. A detective testified that on

January 6, 2011, and February 9, 2011, Trinidad told the detective what Maldonado and Nieves said about the shooting, including details that were not in the criminal complaints. Maldonado's motion did not discuss that stipulation or attempt to explain how Harper's alleged observations of paperwork concerning Maldonado's case fit in the timeline established at trial.

¶19     We are not persuaded that the proffered testimony from Sullivan and Harper would have significantly affected the jury's assessment of Trinidad's credibility. Moreover, we agree with our supreme court's detailed assessment of the strength of the State's case. Although the court in *Nieves* considered the weight of Trinidad's testimony in a different context, the court's analysis is persuasive. Put simply, S.V.'s testimony was so strong that even if Trinidad had not testified, or if his credibility had been further impeached, there is not "a reasonable probability that … the result of the proceeding would have been different." *See **Strickland***, 466 U.S. at 694; *see also **Nieves***, 376 Wis. 2d 300, ¶60. Therefore, because Maldonado was not prejudiced by trial counsel's decision not to call Sullivan and Harper as witnesses, he is not entitled to relief.

## III. Trial counsel's lack of objection to testimony concerning Boogie Man.

¶20     Maldonado's motion alleged that he was prejudiced by trial counsel's failure to object to S.V.'s testimony about statements by Boogie Man. As noted, Nieves' trial counsel objected to this testimony on hearsay grounds, and the trial court overruled the objection. The State concedes, as it did in *Nieves*, that the trial court improperly admitted S.V.'s testimony concerning Boogie Man's statements. Assuming that Maldonado's trial counsel should have objected, the crucial issue is whether he was prejudiced by trial counsel's failure to do so.

¶21     The circuit court concluded that Maldonado was not prejudiced for two reasons.  First, the circuit court said it was unlikely that the trial court would have sustained the objection, given that it overruled Nieves' hearsay objection.  Second, the circuit court said that for the same reasons the Wisconsin Supreme Court concluded that it was harmless error to have admitted Boogie Man's statements, Maldonado was not prejudiced by trial counsel's failure to object.  *See Nieves*, 376 Wis. 2d 300, ¶¶65-66 (concluding that Boogie Man's single statement to S.V. "that Nieves and Maldonado planned to kill him, when viewed in context, contributed little to [S.V.]'s testimony" and that the error "was alleviated when [S.V.] explained how Nieves and Maldonado fatally shot Buckle and attempted to fatally shoot him").

¶22     We agree with the circuit court.  Maldonado has not shown that his trial counsel's failure to join in Nieves' objection to the hearsay testimony was prejudicial.  We are not persuaded that the trial court would have ruled differently, if both parties had objected.

¶23     Further, *Nieves'* analysis of the impact of the hearsay testimony is persuasive.  The fact that the supreme court considered that issue as part of its harmless error analysis rather than part of an ineffective assistance analysis does not make it less compelling.  Indeed, our supreme court has recognized that the test for harmless error is "essentially consistent with the test for prejudice in an ineffective assistance of counsel claim," except that it is the State who bears the burden of proof.  *See State v. Harvey*, 2002 WI 93, ¶41, 254 Wis. 2d 442, 647 N.W.2d 189.  Based on the strength of S.V.'s testimony, we are not persuaded that "there is a reasonable probability that, but for" trial counsel's failure to object to the hearsay testimony, "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

## CONCLUSION

¶24    For the foregoing reasons, we conclude that the record conclusively demonstrates that Maldonado is not entitled to relief. *See **Balliette***, 336 Wis. 2d 358, ¶18.    Specifically, he has not demonstrated that trial counsel provided ineffective assistance. *See **Ziebart***, 268 Wis. 2d 468, ¶15.    It follows that Maldonado has not shown that postconviction counsel provided ineffective assistance by failing to make the same allegations.    Based on that conclusion, we need not discuss whether the issue Maldonado raised is clearly stronger than the issue postconviction counsel pursued. *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (holding that "cases should be decided on the narrowest possible ground").    We affirm the circuit court order denying Maldonado's WIS. STAT. § 974.06 motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14